# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| Pacific West Site Services, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER IMPOSING SANCTIONS** |
| | ) | |
| vs. | ) | |
| | ) | |
| Gary Robert Vesci, | ) | Case No. 1:13-cv-036 |
| | ) | |
| Defendant. | ) | |

Before the court is plaintiff's motion for sanctions for defendant's counsel having cancelled a deposition on less than 24-hours notice.

## I. BACKGROUND

The underlying disputes between the parties have been explained in prior orders of this court as well as by the federal district court for the Eastern District of California in its remand of plaintiff's removal of a related action pending in state court in California. At bottom, this case is like a number of others filed in this District where out-of-state investors claim they have been misled or are the victims of fraud with respect to investments made in businesses touted as being able to "cleanup" off of the Bakken oil play in North Dakota.[1]

On Thursday, January 22, 2015, defendant's counsel, Robin Perkins, served a notice for taking the deposition of Ken Silva, plaintiff's CFO, for the following Tuesday, January 27, 2015,

---

[1] Without making any judgment about this case, the court has observed in a number of the other "get rich in the Bakken" cases that the losses being claimed could have been avoided had the out-of-state investors: (1) done a minimal amount of due diligence with respect to their business partners and plans; (2) exercised greater oversight; and/or (3) better documented their contractual relationship. Also, in number of the cases, the court has observed that the disappointed investors pursuit of litigation has resulted in their throwing more good money after bad or, in the words of a venerable South Dakota federal jurist, "after having shot themselves in the foot, they have reloaded and shot again."

1

at Perkins' office in Sacramento, California. Plaintiff's counsel had already scheduled the depositions of defendant Gary Vesci and his father for January 29-30, 2015, the Thursday and Friday of the same week, that were going to be taken by plaintiff's California attorney, Bill Warne of the firm of Downey Brand LLP.

On January 26, 2015, at 1:22 p.m. (less than 24 hours prior to the scheduled deposition), Perkins cancelled the Silva deposition by sending an email to Warne. This was after attorney Edmund Searby of the firm of Baker & Hostetler, which was also representing plaintiff, had traveled from his office in Cleveland, Ohio to defend the deposition.

Plaintiff in this case is represented by three separate law firms. The firm that initially took the lead role and initiated the action is Baker & Hostetler, a large national firm. Three attorneys from its Cleveland, Ohio office have entered appearances in this action: Searby; Darren Crook; and Ruth Hartman. Plaintiff later retained Downey Brand, a regional law firm headquartered in Sacramento, California. From this firm, attorney Warne has entered an appearance and appears now to be taking a lead role in the case. The third firm is the Vogel Law Firm, another regional law firm headquartered in North Dakota, which presumably was retained simply to act as local counsel.

Defendant is represented by Perkins & Associates, a small Sacramento law firm. Two attorneys from the firm, Perkins and Michael Shoff, have entered appearances. However, it appears that they may be assisted by another attorney from their firm.

Before turning to the merits of the motion, it is helpful first to consider some of the more relevant correspondence exchanged between counsel for the parties:

- <u>Email from Warne to Perkins, October 22, 2014, at 8:06 a.m.</u>

    Hi Robin,
    It was good talking to you. As discussed, I have been provisionally retained

to represent Charles Somers and his interests in the litigation now proceeding in both ND federal court and in Sacramento. . . . .

- Email from Searby to Perkins, December 2, 2014, 7:02 p.m.

    Robin, following up on our phone call, this is to confirm that the deposition of Ken Silva and Pacific West will take place on December 16, 2014 at your office. We are working to locate additional documents responsive to your second requests. I will contact you this week regarding the timing of the production and will serve any written objections on or before December 8.

    Also, please continue to hold December 17 for the deposition of Gary Vesci and December 18 for the deposition of Victor Vesci. I understand that Bill Warne will follow up with you shortly to confirm the dates for the depositions of your client and his father. Best,

- Letter from Hartman to Perkins and Shoff dated January 12, 2015, by email and overnight mail

    Dear Counsel:

    Enclosed please find a disk containing additional documents, bearing a bates range of PW002796-PW0012251, which are responsive to *Vesci's Request for the Production of Documents from Pacific West and Ken Silva* and are produced subject to Pacific West's Objections set forth on December 8, 2014.

    Should you have any questions, do not hesitate to contact me.

- Letter from Hartman to Perkins and Shoff dated January 16, 2015, by email and overnight mail

    Dear Counsel:

    Please find our revised Notices of Depositions and Subpoenas. Our agreed-upon schedule is as follows:
        (1)    Gary Vesci on January 29, 2015 at 9 am
        (2)    Victor Vesci on January 30, 2015 at 9 am

    Should you have any questions, do not hesitate to contact me, Ned or Bill.

- Email from Shoff to Searby, Hartman, and Warne, Thursday, January 22, 2015, 6:24 p.m.

    Please see the attached Deposition Notice [for Ken Silva noticing deposition for

January 27, 2015].

- <u>Email from Warne to Perkins, Friday, January 25, 2015, 2:53 p.m.</u>

    Robin, as discussed moments ago by phone, you have given us permission to file the stipulation and proposed order regarding extensions in the ND action. We've just agreed that the stipulation will adopt the dates set forth in your proposed stipulation except for the fact that the proposed trial date will be December 2, 2015, as opposed to December 9, 2015, as you had suggested.

    Thanks for your cooperation. Please contact all on this email if my understanding is in anyway incorrect. Based on your agreement, Ms. Hartman will be electronically filing our joint proposal soon.

    Bill Warne

- <u>Email from Perkins to Warne, Monday, January 26, 2015, 11:33 a.m.</u>

    Bill:

    I am working on my client to get a response to your client's settlement offer. It is taking a little longer than expected but I should have something today. It makes little economic sense to go forward with the depositions and incur significant fees and costs if we can resolve this matter. Although I know both of our schedules are crazy, I would propose that we move the depositions out a couple weeks so that we can continue to discuss settlement. Your thoughts?

- <u>Email from Warne to Perkins, Monday, January 26, 2015, 11:44 a.m.</u>

    I will call my client. Searby is already out here. If you give me a number now and give me something that doesn't blow things up, I would have an easier time of it. I am also concerned about the order. No guarantees that the judge will grant.

    Bill

- <u>Email from Perkins to Warne, Monday, January 26, 2015, 1:22 p.m.</u>

    I understand. For now, I am going to take Ken Silva off calendar for tomorrow. I did not know Searby was going to be out here. As indicated, I will try to get back to you today with a response to the settlement offer.

4

- <u>Email from Warne to Perkins, Monday, January 26, 2015, 1:40 p.m.</u>

  You sent your revised notice last Thursday for Mr. Silva's deposition to be taken tomorrow. Ned Searby is here, having flown out from back east. That's an expensive flight and expensive time that we would have easily avoided if you had told me on Friday when we spoke. Instead, when we did speak on Friday, just after you noticed this deposition, you said nothing about not moving forward. We stand ready to proceed as scheduled tomorrow. Please tell me by 3:00 p.m. if you will change your position regarding tomorrow's deposition.

- <u>Email form Perkins to Warne, Monday, January 26, 2015, 2:00 p.m.</u>

  Bill:

  As I indicated, after you associated in as counsel and depositions were scheduled for your office this week, I did not honestly think Mr. Searby would even be present. And you never once indicated Mr. Searby would be attending. In any event, the flight will not be wasted as we intend to go forward with the depositions of Gary and Victor Vesci if we cannot resolve this case.

  Thank you.

There is no record of any further communication from Warne to Perkins after Perkins' last email at 2:00 p.m. on the 26th. In other words, while perhaps under no obligation to do so, Warne did not correct Perkins' impression that Searby would be attending the depositions of his client and his client's father by informing him that Searby was in town only to defend the Silva deposition.

Searby, who traveled from Cleveland to Sacramento on Sunday, January 25, presumably to meet with Silva in advance of his deposition the next day, returned to Cleveland on January 27th without staying for the depositions of defendant and defendant's father scheduled for the 29th and 30th.

## II. DISCUSSION

### A. Why Perkins' precipitous action in cancelling the deposition warrants sanction

There is no dispute that Perkins cancelled the Silva deposition at the last moment after having been informed that Searby was in town for the deposition and that plaintiff's counsel objected to its cancellation. Hence, the court will focus upon the excuses offered by Perkins for why sanctions should not be imposed for this precipitous action.

One of the excuses Perkins offers for cancelling the deposition is that the parties were actively involved in settlement negotiations and that he cancelled the deposition with an eye toward saving litigation expense if the case settled. The problem with this is that no settlement was reached when the deposition was cancelled. In fact, not only did the case not settle, the two other depositions scheduled for that week went forward.

Perkins contends he was not aware that Searby would be coming to Sacramento for the deposition of Silva when he scheduled it at the last moment, given that Warne, whose office is also in Sacramento, had assumed a leading role in the case and was going to be deposing the defendant and the defendant's father later in the week. The problem with this argument is that, whatever impression Perkins may have been under during the week leading up to the Silva deposition as to which of plaintiff's numerous attorneys would be handling the Silva deposition, it is clear that Perkins was aware when he cancelled the Silva deposition that Searby had traveled from Cleveland for the deposition.

Perkins also appears to suggest that he was not aware when he cancelled the Silva deposition that Searby had traveled only for the Silva deposition. That also, however, is no excuse. Even if Perkins believed Searby's time would not be wasted by his being able to attend the depositions of

his client and his client's father, that was not for Perkins to decide. And, his failure to get a clearer picture of what was going on (which he could have done by simply picking up the phone and discussing the matter directly with Warne) is his own fault.

Finally, Perkins appears to suggest that he noticed the Silva deposition because (1) the deadline for completing discovery was approaching and there was no guarantee the court would extend the deadlines, and (2) plaintiff had jammed him up by the late production of some 9,500 pages of information relevant to Silva's deposition less than two weeks prior. But, even if that was true,[2] there are other steps that Perkins could have taken, such as filing a motion with the court in lieu of scheduling the Silva deposition, cancelling the deposition earlier, or simply going forward with the deposition and making a record that it may have to be continued based on the purportedly late disclosure.

In short, Perkins' cancellation of the deposition at the last moment was not appropriate and warrants sanction pursuant to Fed. R. Civ P. 30(g). Cf., e.g., Edmonds v. Seavey, No. 08 Civ. 5646, 2009 WL 1285526, at **2-3 (S.D.N.Y. May 5, 2009); Pine Lakes Intern. Country Club v. Polo Ralph Lauren Corp., 127 F.R.D. 471, 472 (D.S.C. 1989) ("Courts have consistently interpreted Rule 30(g) to allow an award of expenses and attorney's fees where the party noticing the deposition fails to attend and does not deliver sufficient notice of cancellation to the other party."). This is true even if Perkins' situation is comparable to that of the football player who is flagged for a penalty because the referee only saw the last punch.

---

[2] In the cover letter for the transmittal of the 9,500 pages of documents that were not turned over until mid January, plaintiff's attorney Hartman acknowledged that the documents were "responsive to Vesci's Request for the Production of Documents from Pacific West and Ken Silva." The record does not reflect when that request was served, but Perkins claims that the initial production of documents responsive to the request took place in March 2014. But, regardless of when it was served, the fact that 9,500 pages of apparently responsive documents were not initially forthcoming and had to be produced later by the party initiating the litigation is certainly "eyebrow raising."

7

**B. What is the appropriate amount to be awarded**

Plaintiff claims it should be reimbursed for Searby's travel expenses for his trip to Sacramento from Cleveland, including first class round-trip air fare, hotel for two nights, meals, and miscellaneous expenses (including hotel room minibar), for a total of $1,996.05. Plaintiff also seeks $5,450.00 for ten hours of travel time based on a billing rate of $545.00 per hour.[3] This brings the total being claimed by plaintiff as reasonable and appropriate to $7,446.05.[4]

If plaintiff wants to employ counsel from Ohio to litigate a business dispute centered in California where both parties are located - three time zones away,[5] that certainly is plaintiff's right. This includes paying to have an attorney travel from Ohio to California for the sole purpose of defending a single deposition, even though plaintiff had fully-capable California counsel on the scene who took the depositions of defendant and his father later the same week. But, while this is plaintiff's right, that does not mean the court has to put its imprimatur on this luxury by awarding fees and costs on this basis - even as a sanction.[6]

---

[3] Defendant has not objected to the hourly rate claimed by Searby. The court notes, however, that plaintiff elected to file its case in this District and the prevailing rate here is significantly less.

[4] The total cost for defending the Silva deposition had it gone forward would have been much greater. In addition to the $7,446.05 being claimed here, there likely would have been additional attorney time for preparing for the deposition, meeting with Silva in advance, and attending the deposition as well as additional expense for lodging, meals and miscellaneous items. Likely, the total amount just for Searby's time and expenses would have been more than double what is being claimed now. Also, some of the attorney preparation time would likely have been duplicated by Warne's preparation for the depositions of defendant and his father thereby making the total cost for using an attorney from three time zones away just to defend the Silva deposition even higher. Moreover, this assumes Warne did not participate in any preparation of Silva for his deposition along with Searby and was not intending to sit in on the Silva deposition.

[5] The "three-time-zone difference" is a point trumpeted by plaintiff's counsel in characterizing the unreasonableness of Perkins cancelling the deposition.

[6] Plaintiff claims that the need to use multiple firms to take the three depositions was to enable it to "complete the depositions on a tight schedule before the discovery cutoff." The problem with this contention (assuming it was the actual reason for Searby traveling for the one deposition) is that any "tight schedule" was a situation of plaintiff's and its counsel's own making. Among other things, plaintiff could have engaged California counsel sooner who, in turn, could have managed the litigation to avoid the purported necessity of Searby traveling for a single deposition. Also, in

After considering all of the circumstances, the court concludes that payment of $1,500 is appropriate. On the one hand, it provides plaintiff with some compensation without fully rewarding its champagne tastes. On the other hand, it imposes more than a nominal sanction upon Perkins.

## III. ORDER

Plaintiff's motion for sanctions (Doc No. 97) is **GRANTED IN PART**. Perkins shall pay $1,500 to plaintiff as a sanction for the cancellation of the Silva deposition within thirty days of the date of the entry of this order.

**IT IS SO ORDERED**

Dated this 5th day of May, 2015.

>                     */s/ Charles S. Miller, Jr.*
>                     Charles S. Miller, Jr., Magistrate Judge
>                     United States District Court

---

setting the initial deadline for discovery, the court granted all of the time the parties requested and later extended it from July 1, 2014, to February 5, 2015. The point is that there is no apparent reason why plaintiff's counsel had to leave it until the last week of January 2015, to complete the depositions. But, even if a confluence of unfortunate events precluded the taking of the depositions before then, plaintiff could have earlier sought the additional extension of time that the parties requested by a stipulation filed on January 23, 2015, and that the court granted.

As for the last point (and somewhat curiously), Searby purchased the first class travel tickets for which reimbursement is being sought on December 26, 2014, for travel to Sacramento on January 25 and return on the 29th. This was prior to the actual noticing of the three depositions for the last week of January. And, while this may have been because the parties had blocked off the last week of January for scheduling depositions prior to their being noticed, the point is plaintiff's counsel had enough time to either allocate the work more efficiently or seek the extension that was later sought on January 23, 2015.

Finally, and this is a much smaller point, the first class air travel booked a month in advance may have been necessary. But, if so, one would have thought that Searby, who claims here to have been "on the clock" while traveling, could have managed to do some work - even if only reading for another case. During a recent three hour flight to the West Coast for a judicial meeting, the undersigned managed to do some court-related reading, even though jammed in the middle seat in coach.

It is no wonder that the costs of the civil litigation are so high and out-of-reach for all but the wealthy save in contingency-fee cases.